[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiffs are the lessors and the defendant the lessee on a lease under the terms of which the defendant was obligated to pay $5,000 a month for rent when this dispute occurred.
By stipulation of the parties, 13 Joint Exhibits were submitted to the court along with a stipulation of facts. The events leading up to the present action in which the plaintiffs seek to evict the defendant may be summarized as follows:
The defendant operates a truck terminal on the leased premises, the terminal being reached over an access road. During the summer of 1989, this access road developed potholes and its overall condition was deemed to pose a threat to safety of the defendant's drivers and vehicles.
Paragraph 11.3 of the lease requires the plaintiffs to properly maintain the access road, stating:
 Landlord shall, at its expense, maintain the terminal yard and the entry and exit roadways in good order, repair and condition so as to bear and withstand all loads, uplifts and stresses not only from Tenant's heavy commercial vehicles and the heavy commercial vehicles of other occupants of the terminal, but also from such hydrostatic and climatological conditions as pertain to the Leased Premises.
On July 14, 1989, counsel for the defendant advised counsel for the plaintiffs by letter of the condition of the road and requested prompt repairs pursuant to 11.3 of the lease. In this letter, the plaintiffs were advised that if the repairs were not made, the defendant would make them and deduct the cost from the rental payment, relying on 20 of the lease for this remedy.
When subsequent requests produced no response from plaintiffs, counsel for the defendant wrote again on August 8, and reiterated the defendant's intention to perform the repairs and deduct the cost from future rent payments. CT Page 618
In response to this letter, the plaintiffs wrote the defendant and advised that "any contractor who appears on the subject property without written authorization from me will immediately be arrested for trespassing. . . ." (Exhibit 8).
The defendant thereupon had the access road repaired at a cost of $4,605.17 and in November of 1989, deducted that amount from the rental payment remitted to the plaintiffs for that month.
In this action, the plaintiffs seek to evict the defendant for non-payment of the November rent. Thus, the issue is whether the tenant was within its rights in withholding from the November rent the amount expended to repair the access road.
 I
In withholding the repair costs the defendant was relying on 20 of the lease which states in pertinent part:
 In the event of the failure by Landlord to perform any of its obligations under this Lease or to make any payments required to be made by Landlord hereunder or to make any payments arising out of or with respect to any incumbrances on the Leased Premises, then Tenant may, at its election, perform such obligations or make such payments and in default of prompt reimbursement of the cost thereof by Landlord, Tenant may deduct the amount of such expenditures from the next maturing installment or installments of rent or other sums payable hereunder by Tenant. . . .
There is no question but that the plaintiffs (landlord) were obligated to make the road repairs. When notified of the condition, the plaintiffs did not deny repairs were needed and thus acquiesced in the determination of the defendant that repairs were necessary. Then, when they responded as they did in the intemperate language of Exhibit 8, threatening "immediate arrest," they were, in effect, saying the road needed repairs, they were not going to do them, and no one would be permitted to do them.
It is significant that the plaintiffs or their agents were on the premises on one or more occasions, both before the work was performed and after it was performed. (Stipulated Fact #6, in part).
These circumstances are in marked contrast to the factual situation in Haddad v. Francis, 40 Conn. Sup. 567 (1986), relied upon by the plaintiffs. There, the court noted that ". . . no serious CT Page 619 effort was made to resolve the misunderstanding. If this default stood alone, the court would be disposed to granting equitable relief." This defendant made several efforts to resolve this situation only to be ignored and then threatened with arrest. It would be grossly inequitable for the court to rule against this defendant, thereby permitting the plaintiffs to profit from their intentional lease violations and subsequent unprofessional behavior.
Relying on equitable principles alone, the court concludes that the defendant was within its rights and justified in withholding the cost of the road repairs.
 II
The plaintiffs also argue that the lease provisions of 20 do not provide the defendant with the right to net out the costs of the repairs. They do not dispute that the defendant had the right to make the repairs, nor the fact that they were performed, nor is the reasonableness of the charges questioned.
The plaintiffs contend that it is a condition of reimbursement that notice of the amount due be given with a time for compliance. Haddad v. Francis, supra, at 579.
However, the plaintiffs overlook the trial court's further comment at pages 579 and 580:
 In an eviction action, however, the reasonableness of time can be one of the most important issues. . . Under the circumstances of this case, notice of a default and adequacy of time for the curing of the default are simply not issues. As with tax increases, the parties have been in dispute on the subject of insurance premium reimbursements for several years.
In the instant matter, the defendant had been attempting to "get the attention" of the plaintiffs since July. The plaintiffs not only ignored the issue but threatened the defendant or anyone contracting to do the necessary work for which the lease made adequate provision. The plaintiffs were on the premises and saw the work had been performed. They never contacted the defendant to protest nor to inquire as to the cost. The defendant waited almost two months before resorting to the withholding tactic of which the plaintiffs now complain.
One can well imagine the defendant's frustration and the process by which he concluded that the plaintiffs were not cooperating and further letters would constitute a waste of time CT Page 620 and effort.
Therefore, even if one were to agree with the plaintiffs' interpretation of 20 and assume the reimbursement process employed was faulty, as in Haddad, there was a dispute between the parties. The plaintiffs were in default and took no steps to correct their default. Up to the time of the withholding in November, the defendant had acted reasonably, responsibly, and with restraint. This act of withholding the repair costs, even if improper, does not justify a forfeiture of the leasehold. Haddad, supra, at 580, citing Seven Fifty Main Street Associates v. Spector, 5 Conn. App. 170, 174 (1985). Such a result would be unconscionable in the opinion of the court.
Conclusion
It is therefore the conclusion of the court that judgment should enter for the defendant.
ANTHONY V. DeMAYO, JUDGE